UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL NO. 21-155 |
|---|---|---|
| v. | * | SECTION: L |
| ODELL GRIGGS | * | |

\* \* \*

## FACTUAL BASIS

The United States and defendant **ODELL GRIGGS** ("**GRIGGS**") stipulate and agree that the below facts are true and that they would have been proven beyond a reasonable doubt had this matter proceeded to trial. The United States and **GRIGGS** further stipulate and agree that these facts provide a sufficient basis for a plea of guilty to the charge that **GRIGGS**, not being lawfully entitled a certificate, license, and document issued to officers and seamen by any officer and employee of the United States authorized by law to issue the same, did receive and possess said certificate, license, and document, with intent unlawfully to use said certificate, license, and document, in violation of Title 18, United States Code, Section 2197. The below facts are offered for the purpose of establishing a sufficient factual basis to support the guilty plea and therefore do not necessarily describe all the details of the offense or **GRIGGS**'s complete knowledge of the offense.

**A.    At all times relevant herein:**

Federal statutes and regulations ("federal law") authorized the United States Coast Guard ("USCG") to issue merchant mariner credentials ("MMCs") and related endorsements. Under federal law, all mariners employed aboard United States merchant vessels greater than 100 gross registered tonnage, with a few limited exceptions, were required to have valid MMCs. Furthermore, to serve in various positions, federal law required mariners to have particular

AUSA _CM_
Defendant _OG_
Defense Counsel _JPB_

endorsements added to their MMCs. Consequently, an MMC and each endorsement to an MMC each constituted a "certificate, license, or document," as described in Title 18, United States Code, Section 2197.

Endorsements determined what position mariners could work, on what kind of vessels, and in what waters. The presence of an endorsement on an MMC indicated that the mariner was qualified to serve in the specified capacity and that he had met all legal requirements for that endorsement. Federal law prohibited a mariner from serving in a position for which he lacked the required endorsement. Similarly, federal law prohibited a business from employing a mariner in a position for which he lacked the required endorsement.

In order to obtain an MMC, a mariner was required to meet various requirements and to take an oath, promising to faithfully and honestly perform all the duties required by the laws of the United States. For many endorsements, federal law required mariners to pass USCG-administered examinations. These examinations tested mariners' knowledge and training to safely operate under the authority of the endorsements. The examinations, which typically consisted of numerous separately-graded modules, were administered at USCC regional exam centers. One such regional exam center, known as REC New Orleans, was located in the Eastern District of Louisiana. USCG employees at the regional exam centers entered the scores into a computer system used to manage the issuance of credentials to mariners and to process applications for MMCs and endorsements.

In some situations, passing an examination for one endorsement could enable a mariner to obtain one or more additional endorsements. This could occur, for example, if the examination fulfilled a requirement for an additional endorsement or if obtaining the tested for endorsement fulfilled a requirement for an additional endorsement.

2

AUSA _CM_
Defendant _OG_
Defense Counsel _JPB_

**B.     GRIGGS received, possessed, and intended to use endorsements to which he was not lawfully entitled**

**GRIGGS** was a mariner who sought to add what is known as a Mate Less Than 1600 Gross Registered Tonnage Upon Near Coastal Waters ("Mate 1600 NC") to his MMC. As **GRIGGS** knew, in order to lawfully obtain this endorsement, he was required to pass a specific examination at a regional exam center.

Sharron Robinson ("Robinson") was a maritime industry worker known to **GRIGGS**. Beverly McCrary ("McCrary") was a USCG employee at REC New Orleans. Robinson informed **GRIGGS** that McCrary could, in exchange for money, arrange for mariners to receive false passing examination scores at REC New Orleans.

Prior to February 15, 2015, **GRIGGS**, having been referred by Robinson, formed an agreement with McCrary to pay McCrary a sum of money in exchange for McCrary arranging for another USCG employee at REC New Orleans to falsely report that **GRIGGS** had passed the examination required for a Mate 1600 NC endorsement. Pursuant to this agreement, **GRIGGS** paid McCrary a sum of money.

As a result of **GRIGGS**'s conduct, on or about February 15, 2015, a USCG employee at REC New Orleans falsely reported in a USCG computer system that **GRIGGS** had passed the examination associated with his application for a Mate 1600 NC endorsement. As **GRIGGS** knew, this false report was made in furtherance of, and was essential to, his receipt of the endorsement. As **GRIGGS** knew, he had not passed the examination and, therefore, was not lawfully entitled to the endorsement. As a result of **GRIGGS** so intentionally causing the USCG examiner to make this false entry, the USCG issued **GRIGGS** a Mate 1600 NC endorsement.

AUSA _CM_
Defendant _OG_
Defense Counsel _JPB_

**GRIGGS** later sought to add what is known as a Third Mate Unlimited Tonnage Upon Oceans ("Third Mate Unlimited Oceans") endorsement to his MMC. As **GRIGGS** knew, in order to lawfully obtain this endorsement, he was required to pass a specific examination at a regional exam center. Prior to May 26, 2017, **GRIGGS**, after being referred again by Robinson, formed an agreement with McCrary to pay McCrary a sum of money in exchange for McCrary arranging for a USCG employee at REC New Orleans to falsely report that **GRIGGS** had passed the examination required for a Third Mate Unlimited Oceans endorsement. Pursuant to this agreement, **GRIGGS** paid McCrary a sum of money.

As a result of **GRIGGS** conduct, on or about May 26, 2017, a USCG employee at REC New Orleans falsely reported in a USCG computer system that **GRIGGS** had passed the examination associated with his application for a Third Mate Unlimited Oceans endorsement. As **GRIGGS** knew, this false report was made in furtherance of, and was essential to, his receipt of the endorsement. As **GRIGGS** knew, he had not passed the examination and, therefore, was not lawfully entitled to the endorsement. As a result of **GRIGGS** so intentionally causing the USCG examiner to make this false entry, the USCG issued **GRIGGS** a Third Mate Unlimited Oceans endorsement.

The aforementioned endorsements, to which **GRIGGS** was not lawfully entitled, authorized a mariner to, among other things, serve as the third mate of vessels of any tonnage in any waters. The third mate of a vessel holds an officer-level position in the deck department. The third mate typically is responsible for, among other things, navigation, keeping watch of the bridge, and maintaining fire safety equipment.

From on or about February 15, 2015, through on or about October 20, 2020, in the Eastern District of Louisiana and elsewhere, **GRIGGS** received and possessed the above-referenced

AUSA _CM_
Defendant _OG_
Defense Counsel _JPG_

endorsements and a MMC containing said endorsements, knowing that he was not lawfully entitled to them and with the intent to unlawfully use them.

_____  1/13/22
CHANDRA MENON              Date
Assistant United States Attorney

_____  1/13/22
JUAN P. BERNAL             Date
Counsel for Defendant

_____  13 JAN 2021
ODELL GRIGGS               Date
Defendant